David C. Wakefield, Esq.    Bar #: 185736
Law Offices of David C. Wakefield
10620 Treena Street, Suite 230
San Diego, CA 92131
Telephone:  619.241.7112; Facsimile:  619.342.7755
E-mail:    dcw@DMWakeLaw.com ;  wakefieldlawassistant@gmail.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED AFRICAN-ASIAN ABILITIES CLUB; JESSIE JAMES DAVIS IV, UAAAC MEMBER** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **SHADOWS TC INVESTORS, L.P.; CALIXTO DELGADO, Manager, Shadows Apartments; AND DOES 1 THROUGH 10, Inclusive** <br><br> **Defendants.** | **Case No:** <br><br> **COMPLAINT** <br><br> **DISCRIMINATORY PRACTICES** <br> **[US Fair Housing Act of 1988 [**42 U.S.C. §§ 3600 et seq, §3604(c), §3604(f)(1-3), et seq.; CA Government Code 12925, 12927, 12955; CA Civil Code §§ 51, 52, 54.3** <br><br> **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.    Plaintiffs case involves system-wide housing discrimination by Defendants in violation of the U.S. Fair Housing Act Amendments of 1988 (FHAA), the California

Fair Employment and Housing Act (CFEHA), the CA Unruh Civil Rights Act (UCRA), the CA Disabled Persons Act (CDPA), and Title III of the Federal Americans with Disabilities Act (ADA). Plaintiffs make the following allegations in this civil rights action.

## JURISDICTION AND VENUE

2.      The federal jurisdiction of this action is based on the 42 U.S.C. §§ 3601, 3604 et. seq. - the U.S. Fair Housing Act Amendments of 1988, and 42 U.S.C. § 12101 et. seq., the federal Americans With Disability Act.  Venue is proper in this United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b), because a substantial part of Plaintiffs' claims arose within said Judicial District.  Defendants' property that is the subject of this action is an apartment complex located in the present Federal judicial district.  Defendants' apartment complex consists of four (4) or more residential units.

## SUPPLEMENTAL JURISDICTION

3.      This United States District Court for the Central District of California has supplemental jurisdiction over the California state claims as alleged in this Complaint pursuant to 28 U.S.C. § 1367(a).  The reason supplemental jurisdiction is proper in this action is that because all the causes of action or claims derived from federal law, and those arising under CA state law, as herein alleged, arose from common nucleus of operative facts.  The common nucleus of operative facts, include, but are not limited to, the incidents where Plaintiffs and at least one of the organizational members were denied full and equal access to Defendants' rental services and/or goods in violation of both federal and state laws when he attempted to enter, use, and/or exit Defendants' facilities where said rental services and goods were located or should have been provided.   Further, due to this denial of full and

2

equal access, Plaintiffs and other individuals with disabilities were injured.  Based upon said allegations, the California causes of actions, as stated herein, are so related to the Federal claims that they form part of the same case or controversy, and these claims would ordinarily be expected to be tried in one judicial proceeding.

## NAMED DEFENDANTS AND NAMED PLAINTIFFS

4.     The term Plaintiffs as used herein specifically include the corporate Plaintiff entity known as the United African-Asian Abilities Club ("Club", "Association", or "Organization") and the individual Plaintiff Jessie James Davis IV, UAAAC Member (hereinafter referred to as "Davis").  Plaintiff United African-Asian Abilities Club is a registered, non-profit corporation.  The individual Plaintiff Jessie James Davis IV is a member of the Plaintiff organization known as the United African-Asian Abilities Club.

5.    Plaintiffs are informed, believe, and thereon allege that named Defendants SHADOWS TC INVESTORS, L.P.; CALIXTO DELGADO, Manager, Shadows Apartments are the operators of the apartment rental business known as Shadows Apartments located at 1901-49 Los Feliz Dr, Thousand Oaks, CA 91362. Plaintiffs are informed, believe, and thereon allege that Defendants SHADOWS TC INVESTORS, L.P.; CALIXTO DELGADO, Manager, Shadows Apartments are the owners, operators, and/or lessors of the real property located at 1901-49 Los Feliz Dr, Thousand Oaks, CA 91362 (hereinafter referred to as the Property).

6.     Defendants SHADOWS TC INVESTORS, L.P.; CALIXTO DELGADO, Manager, Shadows Apartments are, and at all times mentioned herein were, a business or corporation or franchise, organized and existing and/or doing business under the laws of the State of California. Defendants Does 1 through 10, were at all times relevant herein subsidiaries, employers, employees, and/or agents of the named Defendants.

3

7.      Plaintiffs, including Plaintiff Jessie James Davis IV and Plaintiff Club, are informed, believe and thereon allege, that Defendants and each of them herein were, at all times relevant to the action, the owner, lessor, lessee, franchiser, franchisee, general partner, limited partner, agent, employee, representing partner, or joint venturer of the remaining Defendants and were acting within the course and scope of that relationship. Plaintiffs, including Plaintiff Club, are further informed and believe, and thereon allege, that each of the Defendants herein gave consent to, ratified, and/or authorized the acts alleged herein to each of the remaining Defendants.

8.    Plaintiffs allege that Defendants have been and are engaging in a system-wide failure to provide the required reasonable accommodation services, failure to provide the required modification services, and a failure to remove architectural, communication, and other access barriers to Defendants' rental services, which constitutes discrimination against the Plaintiffs.   Plaintiffs also allege Defendants' failure to follow the required policies to comply with the FHA, ADA, CPDA and UCRA, and/or Defendants failure to adopt policies in compliance with said laws also constitutes discrimination against the Plaintiffs.

**CONCISE SET OF FACTS**

9.      Plaintiff Jessie James Davis IV, has physical impairments and due to these impairments, he has learned to successfully operate a wheelchair for mobility. Plaintiff Davis has cerebral palsy and is unable to walk any distance.  Plaintiff Davis said physical impairments substantially limit one or more of the following major life activities, including but not limited to: walking.    Additionally, Plaintiff Davis's upper body range of motion and the dexterity of his hands are substantially limited. Plaintiff Davis also has substantial impairment of his speech and vision.  Plaintiff

4

Davis seeks a new apartment residence and the Plaintiff Club has been assisting Plaintiff Davis in his search for an accessible apartment.  Other individual Club Members, who also have disabilities, help Plaintiff Davis in his attempts to find accessible apartments for rent.

10.    Defendants operate a residential apartment rental property. Prior to the filing the complaint, Plaintiff Club most recently went to Defendant's property in September 2017 and thereafter also in September 2017, Plaintiff Davis was also expressly deterred from Defendant's property due to Plaintiff Davis's knowledge of the existence of access problems to Defendant's rental services and facilities. Defendant's property has an office where rental services are made available.  Club Members assisted Plaintiff Davis in determining if the subject apartments were accessible for Plaintiff Davis.   Plaintiff Club and Plaintiff Davis experienced the following prohibited access problems that exist at Defendant's facilities, that relate to Plaintiff Davis's disabilities, that prevents equal access by Plaintiff Davis to Defendants' rental services, and which also currently deters Plaintiff Davis's attempts to return to Defendant's property.  Plaintiff Davis would further experience hardship, difficulty, and distress as a result of these existing access problems at Defendant's property.  The examples listed below of known barriers to equal access are not an exhaustive list of the barriers to equal access that relate to Plaintiff Davis's disabilities that exist at Defendants' facilities: The parking lot lacks accessible parking.  The accessible parking is the first accessible feature that people with disabilities look for. The accessible parking must have the correct access aisle, which is 5x9 or for the van 8x9, must have the International Symbol of Accessibility, must have the $250 tow away sign, must have the van accessible sign and must have the tow away sign at every parking lot entrance.  Also, the parking space must be the closest to the entrance. Defendant's parking lot failed to provide

Case#:
COMPLAINT

the required accessible parking of the proper disabled parking dimensions, disabled parking access aisle, and failed to provide the required parking signage, including tow away signage, and failed to provide the required disable parking ground markings.  Plaintiff Davis needs the required compliant disabled parking to safely exit and enter a vehicle, especially when others may park improperly.  Defendants failed to locate the required disabled parking closest to the entrance as required. Additionally, the swimming pool failed to have a lifting device.  Some people with mobility traits cannot move the lower part of their body.  They need to be lifted. The lifting device enables them to be lifted and to enter the pool. Finally, Defendants failed to provide the required directional signage indicating an alternate accessible path of travel.  Defendants failed to respond to Plaintiff Davis and Plaintiff Club's inquiries as to Defendants' required accommodation policy and required modification policy.

11.    Plaintiff Davis and Plaintiff Club had planned to return to Defendant's rental property several weeks after their last visit, but they were deterred from returning due to their knowledge that Defendant's existing physical and communication barriers would preclude Plaintiff Davis's being able to access Defendants rental services located within its facilities at the property.  Plaintiff Davis and Plaintiff Club have specific plans to return at the conclusion of this case to obtain rental information and to verify that the Defendants have ceased its discriminatory conduct by removing the barriers to access to Defendant's rental services.

12.   When Plaintiff Club association tested Defendants' facilities it discovered that Plaintiff Jessie James Davis IV and its other Club members with similar disabilities located in the immediate area would be denied equal access to and would have difficulty using Defendant's rental housing' services and facilities since Defendants' facilities failed to comply with the FHA requirement and the Housing Accessibility

6

Case#:
COMPLAINT

Guidelines – Title 24 of the California Building Code, as set forth in part above. Also, Defendant failed to comply with the readily achievable ADA accessibility guidelines related to the area that was open to the public, including but not limited to the office.  Additionally, Defendants failed to remove policy, service, program or physical barriers to equal access within their housing facilities.

13.     Plaintiff Club diverted its time and resources because of service, policy, program and physical barriers at Defendants' property. As a result of Defendants improper actions, Plaintiff Club suffered injury and suffered monetary damages due to the diversion of the Club's resources.  Club personnel conducted detailed Internet searches to determine if Defendants provide large print, deaf interpreter, therapy animal, the required reasonable accommodation policy, and required reasonable modification policy.   Further, the Club retained contractors to investigate said policies, to survey the property, to photograph the property, to investigate when the property was constructed, to investigate the property ownership and to have an access report prepared.  Due to these necessary activities, Plaintiff Club's time and resources were diverted from its normal purposes.   Plaintiff Club also diverted staff to investigate Defendants' Internet presence to determine compliance with the FHA and ADA. Plaintiff Club created a report of the findings which also included Plaintiff Club's investigation into Defendants' written material such as brochures, rental applications and leases. Plaintiff Club's findings regarding Defendants' rental services and facilities were incorporated into an Access Report. See Exhibit B to the Complaint.  Moreover, Plaintiff Club made an oral investigation to ascertain Defendants' companion animal, deaf interpreter and reasonable accommodation and reasonable modification policies. The Club's findings were:  Defendants' facility does not have anything posted regarding service animals.  Defendants' facility does not have any hearing-impaired smoke/fire alarms located at the facility.

Case#:
COMPLAINT

Defendant's facility does not have a TTY machine available on-site.  Defendants do not have any reasonable accommodation policy and reasonable modification policy. Plaintiff Club also caused a physical access consultant to be retained to survey Defendants' facility. The Access Report details the known physical access violations, but is not intended as an exhaustive list of existing violations.  The Access Report is Exhibit B to the Complaint.  The Access Report findings are the following: The parking lot lacks accessible parking.  The accessible parking is the first accessible feature that people with disabilities look for. The accessible parking must have the correct access aisle, which is 5x9 or for the van 8x9, must have the International Symbol of Accessibility, must have the $250 tow away sign, must have the van accessible sign and must have the tow away sign at every parking lot entrance.  Also, the parking space must be the closest to the entrance. Defendant's parking lot failed to provide the required accessible parking of the proper disabled parking dimensions, disabled parking access aisle, and failed to provide the required parking signage, including tow away signage, and failed to provide the required disable parking ground markings.  Plaintiff Davis needs the required compliant disabled parking to safely exit and enter a vehicle, especially when others may park improperly.  Defendants failed to locate the required disabled parking closest to the entrance as required.  Additionally, the swimming pool failed to have a lifting device.  Some people with mobility traits cannot move the lower part of their body. They need to be lifted.  The lifting device enables them to be lifted and to enter the pool. Finally, Defendants failed to provide the required directional signage indicating an alternate accessible path of travel.

14.     Plaintiff Jessie James Davis IV and Plaintiff Club can prove these barriers to equal access to Defendant's rental services exist since the Plaintiffs confirmed the policy, service, program, communication, architectural, and other access barriers

Case#:
COMPLAINT

exist at Defendants' facility. Plaintiffs specifically allege that Defendants knew, to a substantial certainty, that the policy, service, program and architectural barriers precluded wheelchair access by the disabled including Plaintiff Jessie James Davis IV.  Plaintiff Jessie James Davis IV and Plaintiff Club will prove that Defendants had actual knowledge that the architectural barriers precluded access.

15.    Second, due to the abundance of disability rights information and constant news coverage of disability discrimination lawsuits, Defendants had actual knowledge of the state disability laws and access requirements and decided deliberately not to remove policy, service, program and architectural barriers. Plaintiffs and Plaintiff Association allege any alternative methods preclude integration of wheelchair patrons, as it requires them to use second-class facilities. Also, expert testimony will show the facility contained inaccessible features.

16.    Plaintiff Jessie James Davis IV and at least another member of Plaintiff Club intend to return to Defendants' housing facilities in the immediate future to use their rental services and goods.  Plaintiff Jessie James Davis IV frequently travels in the vicinity of Defendant's facility.  Plaintiff Jessie James Davis IV and specifically at least one other Plaintiff Club member intends to return to Defendants' housing facilities at the conclusion of this case to use their rental services and goods, including but not limited to rental applications and obtaining further rental information and brochures.

17.    Pursuant to CA state law and Federal housing access requirements, Defendants are required to remove barriers to their existing facilities.  Further, Defendants had actual knowledge of their access barrier removal duties under the state disability laws.  Also, Defendants should have known that individuals with disabilities are not required to give notice to a governmental agency before filing suit alleging Defendants failed to remove service, policy, program and architectural

Case#:
COMPLAINT

barriers to access.

18.    Plaintiff Jessie James Davis IV and Plaintiff Club believe and herein allege that Defendants' facilities also have access violations not directly experienced by Plaintiff Jessie James Davis IV but are related to his disability that would preclude or limit equal access by Plaintiff Jessie James Davis IV on subsequent attempts, potentially including but not limited to, violations of the FHA, ADAAG, and Title 24 of the California Building Code.

## FHA REQUESTS

19.    Plaintiffs' case also involves Plaintiffs' claims that Plaintiffs made reasonable accommodation and reasonable modification requests to the Defendants to enable Plaintiff to apply at the apartments and the Defendant failed to respond to the requests.  First, on September 30, 2017, Plaintiffs made a personal request at the property for reasonable accommodation and reasonable modification.  Second, on December 8, 2017, Plaintiffs also made their reasonable accommodation and modification request to Defendants in an email.  Finally, on January 13, 2018, Plaintiffs mailed a letter to Defendants that made a request for reasonable accommodation and reasonable modification.   Defendants failed to respond to any of Plaintiffs' accommodation and modification requests that were related to allow Plaintiff Davis to gain access to Defendants' rental services and facilities, either direct access or access through alternative means.

20.    Plaintiffs and other prospective disabled renters are entitled to the protections of the FHA provisions with respect to reasonable accommodation and reasonable modification provisions during the application process.   Prospective renters with disabilities desire to live in accessible housing.  Under the FHA, the above listed barriers to rental services can be addressed by the reasonable accommodation and

10

reasonable modification requirements under the FHA. Defendants failed to provide to Plaintiffs the required FHA reasonable accommodation and modification policies and failed to provide the requested reasonable accommodation and modifications.

21. Plaintiffs allege that Defendants also fail to have the required written policies and practices to receive and process Plaintiffs reasonable accommodation and modification requests.

22. Based on these facts, Plaintiff Jessie James Davis Iv and Plaintiff Club, allege they were discriminated against each time Plaintiffs attempted to patronize Defendant's rental services and facilities and each time Plaintiffs were denied a response to their requests for reasonable accommodations or modifications in order to gain access to Defendants' rental services and facilities.

## STANDING

23. Plaintiff Jessie James Davis IV has sued under the FHA and Title III of the ADA, seeking declaratory and injunctive relief. ADA Title III authorizes a person with a disability to seek injunctive relief if the person "is being subjected to discrimination on the basis of disability" or "has reasonable grounds for believing that such person is about to be subjected to discrimination." 42 U.S.C. § 12188(a)(1). Plaintiff Jessie James Davis IV is being subjected to discrimination on the basis of his disability" or Plaintiff Jessie James Davis IV has reasonable grounds for believing that he is about to be subjected to discrimination." Therefore, Plaintiff Jessie James Davis IV has statutory standing under Title III of the ADA. Also, Plaintiff Club has standing to sue on its own behalf. Plaintiff Club also has standing to sue on behalf of its members as stated herein. Organizational standing is separate from the standing of the organization's members, turning instead on "whether the organization itself has suffered an injury in fact." *Smith v. Pacific Properties and*

Case#:
COMPLAINT

*Development Corp.,* 358 F.3d 1097, 1101 (9th Cir.2004) (citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378–79, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)). Section 3602(d) of the FHA defines a "person" who may sue under the Act to include "corporations" and "associations." 42 U.S.C. § 3602(d) (1988). As a corporation, plaintiffs are "persons" protected by the statute. *See Havens,* 455 U.S. at 378–79 & n. 19, 102 S.Ct. 1114; *Walker v. City of Lakewood,* 272 F.3d 1114, 1123, n. 1 (9th Cir.2001). Plaintiffs must therefore satisfy the requirement for individual standing: "a demonstration of concrete and particularized injury giving." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *see also Havens,* 455 U.S. at 378–79, 102 S.Ct. 1114. In *Pacific Properties,* the Ninth Circuit reaffirmed its holding in *Fair Housing of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir.2002) that an organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question. *Pacific Properties,* 358 F.3d at 1101 (citing *Fair Housing,* 285 F.3d at 905). Testers have played a long and important role in fair housing enforcement, stemming from the Supreme Court's three-decade-old determination that with the Fair Housing Act, Congress intended to establish a broad set of rights to be free from housing discrimination, and that as a general rule, courts should not erect standing barriers—other than the minima required by Article III—to those seeking to vindicate these rights. *See Havens,* 455 U.S. at 372–73, 102 S.Ct. 1114; *see also Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 103, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). The high court more recently cautioned that courts be no less generous in interpreting provisions added to the Fair Housing Act by the Fair Housing Act. *See City of Edmonds v. Oxford House, Inc.,* 514 U.S. 725, 731, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995). Here, Plaintiff Club is an organization that

12

Case#:
COMPLAINT

advocates on the behalf of its members with disabilities when their civil rights and liberties have been violated.  Members of that organization include members that have disabilities that relate to the service, policy, programs and physical accessibility barriers at the property; those disabilities include, but are not limited to, sight, mobility disabilities and hearing disabilities.  Plaintiff Club has members who have been deterred from accessing Defendant's apartment rental services within Defendant's facilities.  The Club or Association is an international group that was started in 2011. One of the Club's core missions is to reduce charitable or public assistance dependence by people with mental and physical conditions by promoting business and employment opportunities. Another critical mission of the Club is to provide written testimony concerning proposed laws related to people with disability conditions. Further, another core mission of Plaintiff Association is to provide counseling and referral housing services to minorities with sight, mental, hearing and physical disability conditions. The Club's mission is frustrated by the rampant violations of the Fair Housing laws. In fact, Plaintiff Club association started its mission in 2011, but through its past experience believes it is very difficult or futile for the most part. Another core mission of Association is searching for accessible businesses and giving awards to them for being voluntarily compliant. These businesses include apartments. As alleged with specificity herein, Plaintiffs had to divert time and resources to investigate Defendants. As in *Smith*, 358 F.3d 1105, a further mission of the group is to eliminate disability discrimination. These missions are not abstract social interests of the Club. Without access to housing people with disabilities cannot live alone.  In the present case, Plaintiff Club members have associational standing to maintain this action.  The U.S. Supreme Court has set out three requirements for an associational plaintiff to have standing under U.S. Const. art. III to sue on behalf of its members: (1) its members must have standing to sue

Case#:
COMPLAINT

on their own.  The United African-Asian Abilities Club's members have mobility, hearing, sight and other disabilities covered by the Fair Housing Act; (2) the interests he/she seeks to protect must be germane to the organization's missions. The missions of United African – Asian Abilities Club are stated herein and are germane; and (3) neither the claim asserted nor the relief requested may require the participation of individual members in the lawsuit.  Such associational standing requires that at least some members would have standing to sue in their own right. The first two factors are required by the Constitution and the third is a judicially self-imposed limit on the exercise of federal jurisdiction that Congress may remove by statute.  In determining whether Plaintiff Club has standing under the Fair Housing Act, we conduct the same inquiry as in the case of an individual: Has the plaintiff " 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction"? *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S., at 261, 97 S.Ct., at 561 (emphasis omitted), quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). There can be no question that the Club has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests, see *Sierra Club v. Morton*, 405 U.S., at 739, 92 S.Ct., at 1368. In the present lawsuit, Plaintiff Club is only seeking organizational damages and injunctive relief and does not seek to recover damages for its individual members.

24.    Initially in year 2011, Plaintiff Club was founded as a non-incorporated association by two African American men that use a wheelchair and one mother of a young Black man that uses a wheelchair.   Plaintiff Club created a blog on February 17, 2012.  Plaintiff Club's blog address is uaaaclub.blogspot.com.   Plaintiff Club's

Case#:
COMPLAINT

blog documents the discrimination based by Blacks and Asians with disabilities and the fact that Blacks and Asians with disabilities make up the largest minority within the world.  Plaintiff Club provides information about how minorities with disabilities can work, provides information about Filipinos with Autism live within Carmona, Cavite, provides information on the Asian with disabilities outreach think tank. Plaintiff Club has published too many articles to list here, but a majority of the articles were posted before September 25, 2016. The Club has a detailed method for determining what company will receive a YES award. Plaintiff Club's YES award provides recognition to those companies or businesses that have undertaken substantial voluntary disability compliance.  The award method includes having a Club member test access compliance by visiting the property and conducting a survey. Also, the Club requests information from the company. The company does not need to request to award or does not need to compensate the Club for the award. Plaintiff Club bears all the costs of the YES award recognition.  Thereafter, all of the information is evaluated by the Club awards committee.  All of the awardees are posted on the Plaintiff Club's blog.  During the last two years the Club provided accessibility YES awards to the over Sixty (60) companies or businesses.  Between 2014 and 2015 the Club also conducted lobbying efforts at the state and national level related to disability rights.  In year 2015, the Club started to help Filipino with disabilities living in the Philippines to market goods and ladies bags. The Club created the ladies bag catalog on September 1, 2015 to market the ladies bag.  Also, Plaintiff Club conducts an educational program for children with or without disabilities living in the poor area of the Philippines and the Club also creates job training programs for the children that are 14 and above. The bag marketing and the children programs have suffered because the Plaintiff Club has had to divert time and other resources to this case. Between year 2011 to year 2016, Plaintiff Club also

Case#:
COMPLAINT

assisted people with disabilities looking for accessible apartments. Before 2016, the Club helped people with disabilities living in Los Angeles related to finding accessible apartment without any success.  Plaintiff Club keeps the records of membership. The Club members include, but are not limited to, Member 001, a wheelchair user; Member 002, a wheelchair user; Member 003, a mother of a person with cerebral palsy; Member 004, a wheelchair user; Member 005, a person with cerebral palsy; Member 006, a person with cerebral palsy; Member 007, sister of a young man with cerebral palsy; Member 008, a woman with one leg; Member 009, a deaf person; Member 010, an advocate; Member 011, a person with cerebral palsy; Member 012, a daughter of a person with cerebral palsy; Member 013, a person with a sight disability;  and Member 014 an advocate.    The Club is a non-profit corporate entity that has the authority to conduct business within California. Before February 2015, more than two members were responsible for issuing the YES awards, for finding apartments, for lobbying and for marketing for the Club. The Club wrote a request by email to the defendant requesting the reasonable accommodation. No one ever responded to the request. When the Club was created back in 2011, the Club was not organized for the purpose to file lawsuits, rather the Club was organized, in part, to advocate for minorities with disabilities. However, the Club discovered that most people do not listen to minorities with disabilities without a lawyer. In the year 2011, CA SB 1186 was moving through the California Legislature. The 3 Club founders felt minorities were not represented in opposing SB 1186. The Founders also created the Plaintiff Club in part to oppose the bill. On February 19, 2012, the Club started assisting its disabled members in finding accessible apartments. On February 27, 2012, the Club wrote a report. The report found that access to residential apartments is very hard to find for minorities with disabilities. On March 24, 2012, the Club created the goal of marketing goods made

16

by people with disabilities from the Philippines. On May 29, 2012, the Club created Awardee Tester Guidelines. On January 22, 2013, the guidelines were updated. The Club spent the remainder of year 2012 and year 2013 evaluating companies for access issues and organizing the Club. In year 2014 the Club did further evaluations. On February 14, 2014, the Club started lobbying against SB 67, AB 54, AB 56 and SB 251. The Club emailed, faxed and mailed letters to all of the elected California politicians and disability groups. From February until September the Club conducted lobbying.

## NOTICE AND WHAT CLAIMS PLAINTIFFS ARE ALLEGING AGAINST EACH NAMED DEFENDANT

25.    Plaintiffs are not required to provide notice to the defendants prior to filing a complaint.   Plaintiffs aver that the Defendants are liable for the following claims as alleged below:

## DISCRIMINATORY PRACTICES IN HOUSING ACCOMMODATIONS

26.    Based on the facts plead at ¶¶ 4 - 25 above and elsewhere herein this complaint, Plaintiff Club and Plaintiff Jessie James Davis IV suffered discrimination in violation of FHA sections 42 § 3604(c), and § 3604(f)(1- 3) as further detailed below. The Federal Fair Housing Act applies to Defendants apartment complex since it has more than 4 residential units.

In this case, the first FHA issue is Defendants failure to adequately provide a required policy and required method for receiving and processing Plaintiffs' FHA requests for reasonable accommodation and modifications. Defendants have an affirmative duty to have a process for responding to said requests. Plaintiffs sent said requests to Defendants' known addresses. Defendants failed to respond.

17

Case#:
COMPLAINT

CLAIM I:  Discrimination In Violation of 42 § 3604(f)(1) For Failing To Have A Policy For Receiving Prospective Tenant Accommodation Requests Or Failing To Train Staff On Said Policy And Failing To Make The Policy Known To The Public

27.    Based on the facts plead at ¶¶ 4 - 25, and elsewhere herein this complaint, Plaintiffs suffered discrimination in violation of this FHA section.  Defendant caused Plaintiffs to suffer disparate impact discrimination.  The relevant FHA statute states it is unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter; (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or… §3604(f)(1) [emphasis added]. The very recent U.S. Supreme Court decision upheld the unanimous rule, of all nine Circuit Courts of Appeal that had previously addressed it, that the FHA statutory scheme permits disparate impact claims, and that those type of claims also do not require a showing of intent.  *Texas Dept. of Housing and Community Affairs v Inclusive Communities Project*, 135 S.Ct. 2507, 2519 (2015).  It is alleged that Defendants prevent prospective renters like Plaintiffs from making a reasonable accommodation request. Defendants have an affirmative duty to have a process to receive said request and to respond to said request. *Giebeler v. M & B Associates*, 343 F.3d 1143 (2003).  Due to Defendants' access barriers, it is difficult for the individual Plaintiff to make the request in person. However, the Club made an in-person request. Moreover, Plaintiffs emailed the request. Also, Plaintiffs mailed the request to the manager. Before emailing and mailing the request, Plaintiffs attempted to ascertain to whom and to where the request should be made without success. Thus, the requests were sent to the public mail and email addresses. Some Club members cannot make the request by phone. Defendants do not have a policy

18

for receiving prospective tenant accommodation request or their staff are not aware of said policy and Defendants failed to make the policy known to the public. Thus, their conduct or omission had a disparate impact on Plaintiffs.

CLAIM II: <u>Failure to Engage in Interactive Process In Violation Of The Fair Housing Act And California Fair Employment And Housing Act</u>

28.     Prospective renters have the right to reasonable accommodations by request. *Giebeler v. M & B Associates*, 343 F.3d 1143 (2003). Based on the facts plead at ¶¶ 4 - 25 above and elsewhere herein this complaint, each of the Plaintiffs suffered discrimination by Defendants in violation of this FHA section.  The FHA's definition of prohibited discrimination encompasses "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Thus, the FHAA "imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons," *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416-1417 (9th Cir. 1994) ("Mobile Home I "), not only with regard to the physical accommodations, see 42 U.S.C. § 3604(f)(3)(A) & (C), but also with regard to the administrative policies governing rentals. To make out a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap "may be necessary" to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation. United States v. California Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir.1997) Likewise, the FEHA in Cal. Gov't Code §

19

12927(c)(1) states that discrimination in the housing context "includes refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling." Finally, the DPA in Cal. Civil Code § 54. 1(b)(3)(B) states that "Any person renting leasing, or otherwise providing real property for compensation shall not refuse to make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises." Plaintiff contends that    Defendant failed to engage in a good-faith interactive process with [him/her] to determine whether it would be possible to implement effective reasonable accommodations so that Plaintiff to apply for a lease or to allow Plaintiff to visit the apartments. In support of this claim, Plaintiff can prove the following: that Defendant was a housing provider; that Plaintiff was a prospective renter; that Plaintiff has a qualifying disability; and that Plaintiff requested via letter that Defendant make reasonable accommodation for [his/her] physical condition so that [he/she] would be able to apply for a lease or to allow Plaintiff to visit the apartments. Due to the physical barriers as alleged herein which may or may not be required to be removed, Plaintiff requested how the manager would accommodate him to access the apartments without removing said barriers. Plaintiff is not secure about applying for a lease or visiting the apartments knowing about said barriers. Thus, Plaintiff made a reasonable accommodation request to determine if Defendant could enable him to access defendant's leasing services or visit the apartments with or without removing said barriers. Plaintiff also had the Club personally make said request. Plaintiff went on the Internet to determine how and where to make the request without success. Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodation could be

Case#:
COMPLAINT

made so that [he/she] would be able to apply for a lease or to allow Plaintiff to visit the apartments.  "…it is incumbent upon the landlord to request documentation or open a dialogue." *Montano v. Bonnie Brae Convalescent Hosp., Inc.*, 79 F.Supp.3d 1120 (2015); *Jankowski Lee & Assoc. v. Cisneros*, 91 F.3d 891, 895 (7th Cir.1996) (as amended Aug. 26, 1996) ("If a landlord is skeptical of a tenant's alleged disability or the landlord's ability to provide an accommodation, it is incumbent upon the landlord to request documentation or open a dialogue."); *1128 *Book v. Hunter*, 2013 WL 1193865, *4 (D.Or.2013) ("The defendants may have believed that the plaintiff was not truly disabled or that her request for accommodation was unreasonable. However, under the FHAA they were required to engage in an interactive process to determine whether or not that was the case."). In the present case, Defendant failed to participate in a timely good-faith interactive process with Plaintiff to determine whether reasonable accommodation could be made; that Plaintiff was harmed thereby; and that Defendant's failure to engage in a good-faith interactive process was a substantial factor in causing Plaintiff's harm.

CLAIM III:  Discrimination In Violation of 42 § 3604(f)(3)

29.    Based on the facts plead at ¶¶ 4 - 25 above and elsewhere herein this complaint, each of the Plaintiffs suffered discrimination by Defendants in violation of this FHA section.  Specifically, Plaintiffs allege that Defendants actions in unlawfully denying the reasonable accommodation request and also reasonable modification request by and for Plaintiff Jessie James Davis IV and the failure to permit the requested reasonable accommodations and modifications, was a violation of all the Plaintiffs' rights under the FHA.  The FHA requires that "….[f]or the purposes of this subsection, discrimination includes-- (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use

Case#:
COMPLAINT

and enjoy a dwelling…" 42 § 3604(f)(3)(B).  Plaintiffs made a reasonable accommodation request that Defendants provide a compliant disabled parking space for Plaintiff Jessie James Davis IV.  Plaintiffs also made a reasonable modification request that Plaintiff Jessie James Davis IV be permitted to install grab bars within the apartment.  Defendants improperly denied Plaintiffs accommodation and modification requests and failed to respond to them.  Defendants improperly denied Plaintiffs requests to modify Defendants' rules and procedures.  Defendants' improper actions constitute discrimination against each of the Plaintiffs in violation of this FHA subsection, as unlawful discrimination on the basis of disability.  Also, Plaintiffs made a reasonable request for the accommodation of a disabled parking space located near the entrance to Plaintiff Jessie James Davis IV's potential apartment unit.  Defendants never responded to Plaintiffs' reasonable disabled parking accommodation request, even though Defendant had sufficient parking spaces available.  Defendants' improper actions constitute discrimination against each of the Plaintiffs and a violation of this FHA subsection.  In this case Plaintiff, via the Club, sent a letter to Defendants requesting a reasonable accommodation related to the rental office and the rental process. Before the Plaintiffs wrote the request, Plaintiffs investigated where to make the request. Plaintiffs mailed the request to the manager of the apartments. Plaintiffs never received a response to the request. Therefore, the Defendant failed to engage in the interactive process to determine the request. In this matter, Plaintiffs are seeking an order requiring the Defendant to have a reasonable accommodation process and to inform perspective renters regarding how to make the request.  Defendants improperly refused Plaintiffs' request for an accommodation based on Plaintiff Jessie James Davis IV's disabilities.

30.    Wherefore, Plaintiffs suffered injury as a result of Defendants actions, and

22

Case#:
COMPLAINT

Plaintiffs now pray for damages, injunctive relief, and other relief as hereinafter stated.

CLAIM IV:  Discrimination In Violation of 42 § 3604(f)(2)

31.     Based on the facts plead at ¶¶ 4 - 25 above and elsewhere herein this complaint, Plaintiff Jessie James Davis IV and Plaintiff Club suffered discrimination in violation of this FHA section.  The relevant FHA statute states it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person… § 3604(f)(2) [emphasis added].   Plaintiff Club and Plaintiff Jessie James Davis IV are not required to have an interest in renting a particular property or dwelling to have standing. *Smith v. Pacific Properties and Development Corp* at 1099 [ *Smith* court held a disabled person does not have to have an interest in actually purchasing or renting a particular property or dwelling in order to allege a discriminatory violation to enforce the rights created by § 3604(f)(2)].   However, as previously stated, Plaintiff Jessie James Davis IV was a prospective renter and Plaintiff Club was also seeking rental housing on the behalf Plaintiff Jessie James Davis IV.  ¶¶5 – 25 above.  In the instant case, Defendant's office located on the property is a "facility" in connection with the rental of a dwelling and the on-site rental services provided within the office fall within the FHA statute.  In the instant case, Plaintiffs both assert that Defendant's failure to remove communication and architectural barriers to permit access to Defendant's on-site rental services contained within the office is a separate, independent, actionable violation of this FHA section § 3604(f)(2), without reference to the ADA.  Plaintiffs have alleged that Defendant failed to provide compliant disabled parking, failed to provide an accessible exterior path of travel to

Case#:
COMPLAINT

the office entrance due to the presence of step changes in level and a path of travel that is too steep, and failed to provide an accessible office.  See also ¶¶5-25.  The 9th Circuit *Smith* court has stated that the mere observation of overt architectural barriers is actionable.  *Smith* at 1104 ["To read an additional standing requirement into the statute beyond mere observation, however, ignores that many overtly discriminatory conditions, for example, lack of a ramped entryway, prohibit a disabled individual from forming the requisite intent or actual interest in renting or buying *for the very reason* that architectural barriers prevent them from viewing the whole property in the first instance" (emphasis in original)].  The *Smith* court found the Defendants liable under this FHA subsection even though that case did not involve ADA Title III claims.  However, Plaintiffs did not just allege that Plaintiffs observed Defendant's overt architectural barriers, but Plaintiffs alleged that Plaintiff Jessie James Davis IV and Plaintiff Club experienced the barriers, and this caused their denial of equal access to Defendant's office facility and its rental services located therein.  Defendant also discriminated against Plaintiffs by failing to modify its practices and policies to provide access via other methods of access to its rental services provided within the rental office.   Defendant's failure to remove the architectural and communication barriers to access its facilities and the rental services located therein, or to provide other methods of access to the office facility, providing rental services constitutes the prohibited discrimination, separately and independently.  Additionally, while not necessary to find primary liability directly within this FHA section as stated above, without reference to any other statute, Defendant's conduct is also prohibited under ADA Title III and constitutes a second, separate, independent source of discrimination against Plaintiffs in violation of FHA § 3604(f)(2).  Plaintiffs assert that any discriminatory conduct in violation of ADA Title III, especially since it specifically involves the express reference to the

24

office facilities and rental services located therein, also constitutes prohibited "discrimination" under FHA § 3604(f)(2).

32.     Plaintiffs suffered the injury of discriminatory conduct by Defendant and Plaintiffs suffered damages as a result.  Plaintiffs seek injunctive relief as well as damages, both of which are available under 42 USC § 3613(c).  Even if its later determined that prospective injunctive relief is not available to Plaintiffs, Plaintiffs are still permitted to recover damages.  *Harris v Itzakhi*, 183 F.3d 1043, 1050 (9th Cir 1999) [During the appeal in *Harris* case,  the plaintiff therein moved Three Thousand (3000) miles away and her injunctive claims became moot.  However, Plaintiff's claim for the retrospective relief of damages were unaffected].  While Plaintiffs can satisfy the injunctive relief prudential standing requirements, the above Ninth Circuit court authority makes it clear that those <u>prudential standing requirements for injunctive relief are not applicable to Plaintiffs FHA damage claims</u>.  Hence, Plaintiffs damage claims survive even if prospective injunctive relief is not available.

CLAIM V:  <u>Discrimination In Violation of 42 § 3604(f)(1)</u>

33.     Based on the facts plead at ¶¶ 4 – 25, and elsewhere herein this complaint, Plaintiffs suffered discrimination in violation of this FHA section.  Defendant caused Plaintiffs to suffer disparate impact discrimination.  The relevant FHA statute states it is unlawful to discriminate in the sale or rental, or <u>to otherwise make unavailable or deny</u>, a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter; (B) <u>a person</u> residing in or <u>intending to reside</u> in that dwelling after it is so sold, rented, or made available; or… §3604(f)(1) [emphasis added].  The very recent U.S. Supreme Court decision upheld the unanimous rule, of all nine Circuit Courts of Appeal that had previously addressed it, that the FHA statutory scheme permits disparate impact claims, and that those type of claims also do not

Case#:
COMPLAINT

require a showing of intent.  *Texas Dept. of Housing and Community Affairs v Inclusive Communities Project*, 135 S.Ct. 2507, 2519 (2015) [ the statutory phrase "to otherwise make unavailable or deny" – the very same statutory language as also used in §3604(f)(1)].  Our Ninth Circuit Court of Appeals previously had reached that same conclusion.  *Halet v. Wend Investment Co.,* 672 F.2d 1305, 1311 (9th Cir 1982).    Based on the facts plead at ¶¶ 4 – 25, and elsewhere herein this complaint, Plaintiffs suffered discrimination in violation of FHA §3604(f)(1).  Wherefore, Plaintiffs were injured, and prays for damages and other relief as hereinafter stated.

CLAIM VI:  Discrimination In Violation of 42 § 3604(c) As To NSA

34.    Based on information, belief, and the facts plead at ¶¶ 4 – 25 above and elsewhere herein, Plaintiffs herein alleges that Defendants caused Club to suffer the injury of discrimination since Defendants violated 42 U.S.C. §§ 3604 (c) with respect to its notices, statements, and advertisements ("NSA").  Plaintiffs allege that Defendants made, printed, or published, or caused to be made printed, or published notices, statements, or advertisements ("NSA") that suggest to an ordinary reader a preference to attract tenants without disabilities.

35.    Defendants' Internet picture advertising has an unlawful disparate impact on Plaintiff Jessie James Davis IV, Plaintiff Club, and Plaintiff Club's other members. Apartment complexes other than the Defendants, properly advertise disability and accessible features on the Internet. For example, on http://www.rent.com/california/valley-village-apartments/the-avery-4-64371353, the apartment called Avery Apartments shows a photograph of the pool with the assistive lift device. The following is the picture from the Avery Apartments:

26

Case#:
COMPLAINT

36.    In a Second Circuit Court decision, the Second Circuit held that "in some circumstances" an ad using human models of one race to the exclusion of others may indicate a racial preference violative of § 3604(c), regardless of the absence of any facially discriminatory verbal message. *Id.* [reasoning that neither the broadly drafted statute nor its legislative history "suggests that Congress intended to exempt from its proscriptions subtle methods of indicating racial preference"] *see also HOME,* 943 F.2d at 647–48 & n. 4 ("discrimination [under the FHA] may occur through words or pictures, and the use of all-white models could be factor in determining whether an advertisement conveys a discriminatory message...."); *Spann v. Colonial Village, Inc.,* 899 F.2d 24, 34–35 (D.C.Cir.), *cert. denied,* 498 U.S. 980, 111 S.Ct. 508, 112 L.Ed.2d 521 (1990); *Fenwick–Schafer,* 774 F.Supp. at 364–66; *Saunders,* 659 F.Supp. at 1058. This same reasoning applies to the present matter.

37.   In the present case, Defendant advertises the subject property on webs sites it controls and others, including but not limited to the following websites: apartments.com and forrent.com.  Defendants' Internet pictures suggest a preference for people without disabilities.  Plaintiffs allege that there is disparate treatment on the internet related to the amenities being offered to people without disabilities and people with disabilities. Defendants' NSAs state the following about the property: Defendants operate an apartment property. The property is located at 1901 Los Feliz Dr, Thousand Oaks, CA 91362.  The property was built in 1989 and has 2 stories

Case#:
COMPLAINT

with 148 units. The rent is approximately: $1,000 - $3,000.  The internet provides a wealth of information regarding the property. The internet advertises that the property has amenities that include: Laundry Facilities, Business Center, Spa, Pool, Playground, High Speed Internet Access, Wi-Fi, Air Conditioning, Heating, Smoke Free, Wheelchair Accessible (Rooms), Dishwasher, Pantry, Kitchen, Range, Refrigerator, Carpet, Tile Floors, Crown Molding, Balcony.  The property advertises on yelp.com, shadowsapartments.org, zumper.com, lowincomehousing.us, apartments.com, forrent.com, mapquest.com, mynewplace.com.  It is very important to know that on shadowsapartments.org, apartments.com, apartmentratings.com, forrent.com, mynewplace.com, there is the equal housing opportunity logo.  The plaintiff alleges that there is disparate treatment on the internet related to the amenities being offered to people without disabilities and people with disabilities. For example, the tow signage was not installed. The accessible parking space had an access aisle, which was not van accessible. The aisle did not have the "no parking" included in the access aisle. The office had a high threshold. There was no International Symbol of Accessibility signage.  The Internet does not state the accessible amenities at all.  Also, the statement the "equal housing opportunity statement" is misleading. In fact, the property is not completely accessible. All the above facts and the facts stated herein have a disparate impact on the disability community.

38.     Plaintiffs allege that the internet NSA is a primary method that potential renters learn information about the amenities offered at apartments and their policies practices and procedures.  Plaintiff Club caused certain such notices of the Defendants to be downloaded and reviewed them. Plaintiffs allege that Defendants existing advertisements on websites is directed toward persons who do not have disabilities. In the present case, none of Defendants' Internet advertising adhered to

28

Case#:
COMPLAINT

the guidelines within 24 CFR §109 [informative section and is still used by HUD as internal guidelines for its NSA complaints, but this CFR section is otherwise no longer operative] or had the following:

> Equal Housing Opportunity Statement: We are pledged to the letter and spirit of U.S. policy for the achievement of equal housing opportunity throughout the Nation. We encourage and support an affirmative advertising and marketing program in which there are no barriers to obtaining housing because of race, color, religion, sex, handicap, familial status, or national origin.  Equal Housing Opportunity Slogan: "Equal Housing Opportunity."
> Table III  Illustration of Media Notice--Publisher's notice: All real estate advertised herein is subject to the Federal Fair Housing Act, which makes it illegal to advertise "any preference, limitation, or discrimination because of race, color, religion, sex, handicap, familial status, or national origin, or intention to make any such preference, limitation, or discrimination."
> We will not knowingly accept any advertising for real estate which is in violation of the law.
> All persons are hereby informed that all dwellings advertised are available on an equal opportunity basis.

39.    Also, in the present case, Defendants had the opportunity, based upon either the large number of models used in an advertisement or the numerous advertisements placed by an advertiser with a particular publisher, to include models of persons with handicaps, a protected group under the FHA. Plaintiffs allege that Defendant engages in disparate treatment with respect to Defendants' internet Notices, Statements, and Advertisements as to the amenities being offered to people without disabilities and people with disabilities.   Plaintiffs can establish liability based on the "ordinary reader" standard. Defendants' Internet advertising uses

Case#:
COMPLAINT

selective media or content exclusively to cater to the majority population without disabilities. Further, Defendants advertising uses catch words, symbols or logotypes and colloquialisms that suggest a preference for people without disabilities. Further, none of the human models used in the said advertising have a known disability. In addition, the said advertising fails to conform to the advertising requirements delineated in Appendix I, Tables I-III of 24 CFR §109.

40.     Plaintiffs allege that Defendants notices, statements, and internet advertisements suggests to an ordinary reader that Defendants have a preference to attract tenants without handicap or disabilities and the persons associated with them. Plaintiffs allege Defendant engages in discriminatory treatment as against Plaintiff Jessie James Davis IV and other similarly situated Club Members with respect to Defendants internet Notices, Statements, and Advertisements, as to the amenities being offered to people without disabilities and people with disabilities. Defendants notices, statements, and advertisements ("NSA") deterred Plaintiffs and other members of the Club from going to and attempting access to Defendants' rental services.    Defendant's NSA fail to provide any information as to any alternative methods of access to the inaccessible features.    Plaintiffs allege that the present Defendant landlord uses its NSA to inform non-disabled potential tenants about the apartments so they do not need to physically visit the place to make housing choices. However, prospective tenants with disabilities are forced to call or physically visit a place to assess the physical access amenities, policies, procedures that affect their disabilities.  Due to Defendant's discriminatory notices, statements, and advertisements, Plaintiffs suffered disparate discriminatory treatment due to Defendant's failure to comply with the FHA in that Plaintiff Jessie James Davis IV, Plaintiff Club, and other similarly situated Club Members need to physically visit the property to ascertain its physical accessibility, and its leasing policies and

30

Case#:
COMPLAINT

procedures that affect Plaintiff Jessie James Davis IV and Plaintiff Club's other similarly situated Members who are persons with similar disabilities.  As a result, Plaintiffs suffered the denial of equal access prohibited under Plaintiff's FHA and ADA claims as stated above.   Additionally, Plaintiffs allege Defendant engages in disparate treatment with respect to Defendants internet Notices, Statements, and Advertisements as to the amenities being offered to people without disabilities and people with disabilities and Plaintiffs suffered discriminatory treatment, including but not limited to the following examples. Under the FHA and ADA, a companion service dog is not a pet and a service dog policy is required but is not provided. Plaintiffs potentially will also need to personally undertake the expense to modify any rental unit to accommodate his disabilities including, but not limited to, such issues as providing accessible parking in close proximity to a potential rental unit, grab bars in the restroom, installation of accessible sink and shower faucets, potentially replacing door operating hardware with accessible hardware, potential ramp at the rental unit entrance door, etc.  Additionally, Defendant's apartment common areas may need to be reasonably modified by Plaintiffs, ie such as any common area grill spaces, etc.  Defendant's NSA do not provide any information as to their required reasonable modification or accommodation policies.

41.    Also, Defendant's internet website NSA are not accessible visually since one is not able to click and increase the NSA font size to make it more readable for persons with impaired vision.  Additionally, Defendant's internet NSAs fail to be offered in alternative methods.  The offices and common areas offer services. Even if the facilities were constructed before March 13, 1991 and the physical barriers are not readily achievable to remove, the services offered in the facilities must be accessible.

42.    Plaintiffs allege Defendant's internet and other Notices, Statements, and

Case#:
COMPLAINT

Advertisements do not state the accessible amenities at all and an ordinary person would conclude it is only directed towards persons without disabilities.  Plaintiff alleges that Defendant's use of the "equal housing opportunity statement" is also misleading. Defendant's apartment property is not accessible. Prospective tenants with disabilities including Plaintiff Club are forced to physically visit a place to assess the access amenities while persons without disabilities do not.  All the above facts stated herein have and did have a discriminatory impact on Plaintiff Club and on the disability community in violation of 42 U.S.C. § 3604(c), § 3604(f)(1-2). Plaintiff Club and Plaintiff Jessie James Davis IV personally experienced the discriminatory conduct as stated above in violation of the FHA.

43.    Wherefore, Plaintiffs were injured, and prays for damages and other relief as hereinafter stated.

SECOND CAUSE OF ACTION : **Violation of California Fair Housing Act**

44.    Based on information, belief and the facts stated above, all named Plaintiffs allege that each of the named Defendants, violated the California Fair Employment and Housing Act.  Based on information, belief and the facts stated above, Plaintiffs allege that Defendants failed to design and construct a covered multifamily dwelling in a manner that allows access to and use by disabled persons by providing, at a minimum, the following features in violation of California Government Code, Title 2, §12955.1: (1) All covered multifamily dwellings shall have at least one building entrance on an accessible route, unless it is impracticable to do so because of the terrain or unusual characteristics of the site. The burden of establishing impracticability because of terrain or unusual site characteristics is on the person or persons who designed or constructed the housing facility. (2) All covered multifamily dwellings with a building entrance on an accessible route shall be

Case#:
COMPLAINT

designed and constructed in a manner that complies with all of the following: (A)
The public and common areas are readily accessible to and usable by persons with
disabilities. (B) All the doors designed to allow passage into and within all premises
are sufficiently wide to allow passage by persons that use mobility devices.  (C) All
premises within covered multifamily dwelling units contain the following features
of adaptable design: (i) An accessible route into and through the covered dwelling
unit. (ii) Light switches, electrical outlets, thermostats, and other environmental
controls in accessible locations. (iii) Reinforcements in bathroom walls to allow
later installation of grab bars around the toilet, tub, shower stall, and shower seat,
where those facilities are provided. (iv) Usable kitchens and bathrooms so that an
individual in a wheelchair can maneuver about the space.  Defendants failed to
design and construct 10 percent of the multistory dwelling units in buildings without
an elevator that consist of at least four condominium dwelling units or at least three
rental apartment dwelling units in a manner that incorporates an accessible route to
the primary entry level entrance and that meets the requirements of paragraph (2) of
subdivision (a) with respect to the ground floor, at least one bathroom on the
primary entry level and the public and common areas. Any fraction thereof shall be
rounded up to the next whole number. Defendants failed to comply with the
requirements of this section as well causing discrimination against the Plaintiffs.

45.     Failure to Provide Reasonable Accommodation and Modification:
Based on information, belief and the facts stated above at ¶¶ 4 – 25 above and
elsewhere in this complaint, Plaintiffs allege that Defendants refused to make the
reasonable accommodations in rules, policies, practices, or services in violation of
CA Government Code sections 12927 and 12955.2, when these accommodations
may be necessary to afford a disabled person equal opportunity to use and enjoy a

33

Case#:
COMPLAINT

dwelling.  As stated in detail above, Defendants refused to make reasonable accommodations with the instant Plaintiffs and discriminated against each of them on the basis of disability.  Additionally, Defendants also failed to permit the reasonable modification requests of Plaintiff Jessie James Davis IV and Plaintiff Club.

46.     Wherefore, Plaintiffs were injured by Defendants' conduct, and Plaintiffs pray for injunctive relief, damages, and other relief as hereinafter stated.

THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS- **Claims Under The Americans With Disabilities Act Of 1990**

47.     Plaintiff is not required to provide notice to the defendants prior to filing a complaint alleging discrimination pursuant to Federal ADA claims.  Skaff v Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832 (9th Cir. 2007), see also, Botosan v. Paul McNally Realty, 216 F.3d 827, 832 (9th Cir 2000).

CLAIM I: **Denial of Participation**

48.     42 United States Code 12182(b) states, "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs are informed, believe, and thereon allege that Defendants violated the said provision because Plaintiffs could not participate in their advertising accommodations because said advertising failed to delineate what features of the property are physically accessible and what services are accessible.  Services

Case#:
COMPLAINT

include alternative methods of access other than removing physical barriers.

CLAIM II: **Participation in Unequal Benefit**

49.    42 United States Code 12182(b) states: It shall be discriminatory to deny an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation. Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiff is informed, believes, and thereon alleges that Defendants violated said provision because the present Defendants do not offer users with disabilities any benefits that will help them decide to go to the place of accommodation. For example, providing physical access and service access is a very important benefit for people with disabilities. Even if the facilities are not completely physically accessible, the person with a disability may decide to go to the place if they provide greater service access. There is no way for a person with a disability to determine if Defendant's place offers service access without the disabled person going to their business to find out that they cannot physically access the facility and that there is also no service access.

CLAIM III: **Separate Benefit**

50.    42 United States Code 12182(b) states "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that

35

Case#:
COMPLAINT

is as effective as that provided to others." Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs are informed, believe, and thereon allege that Defendants violated the said provision since Defendants provide a benefit that is separate and unequal to people with disability by forcing them to go to their place of accommodation to determine if they are physically accessible and to determine if they are service accessible. Persons <u>without</u> disabilities do not need to consider if they can access the place of accommodation when they look at Defendant's advertising.  All they need to consider is if they want to go to the place by looking at the advertising, but persons <u>with</u> disabilities must consider if the place is accessible by looking at the advertising or they need to go there to discover that the place is not accessible. Plaintiffs could not determine from Defendant's advertising if Defendants' facility was accessible.

CLAIM IV: **Integrated Settings**

51.    42 United States Code 12182(b) states, "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual." Plaintiff alleges by failing to offer the alternative methods to physical access, the defendants failed to offer the goods or the services in the most integrated selling. For example, defendants knew that the place of accommodation was not physically accessible but it failed to provide notice in their advertising, notices in the parking lot or otherwise on their premises, to allow people with disabilities to decide if they wanted to use the place by accepting the alternative methods.

CLAIM V: **Administrative Methods**

52.    42 United States Code 12182(b) states, "An individual or entity shall not, directly or through contractual or other arrangements, utilize standards or criteria or

36

methods of administration—(i) that have the effect of discriminating on the basis of disability; or (ii) that perpetuate the discrimination of others who are subject to common administrative control."  Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs are informed, believe, and thereon allege that Defendants violated said provision since Defendants decided to open a business and invite the public for profit. Thus, Defendants agreed to comply with all federal and states laws related to their business. Defendants retained agents and/or employees for business administration including Civil Rights compliance. Thus, Defendants had administrative control over service access compliance. Plaintiff alleges based on information and belief that Defendants' services including alternative methods, auxiliary aids, and business services violate said section because Defendants failed to exercise control over their agents or employees as to ADA compliance.

CLAIM VI: **Screen Out**

53.     42 United States Code 12182(b) states, "...the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;..." Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs are informed, believe, and thereon allege that Defendants violated said provision. Plaintiff alleges that the ADA was passed in 1990. It is alleged that one form of eliminating ADA discrimination is by removing architectural barriers if readily achievable. This claim relates to services even if some barriers cannot be removed or do not relate to physical barriers. Based on information and belief, Plaintiffs

37

allege that Defendants failed to maintain policies to ensure their goods and services are fully accessible. Defendant's failure screens out people with disabilities.

CLAIM VII: **Auxiliary Aids**

54.     42 United States Code 12182(b) states, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;..." Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs are informed, believe, and thereon allege that Defendants violated said provision. Plaintiff Jessie James Davis IV and Plaintiff Club decided it would be a futile gesture to make an auxiliary aid request because Defendants completely failed to comply with the ADA based upon his going to Defendant's place to verify access to rental services and goods; notwithstanding that Defendants failed to remove architectural barriers.  Plaintiffs allege that when Defendants do not remove architectural barriers, Defendants still have the duty to offer auxiliary aids to provide access to the goods and services.  Defendants failed to offer Plaintiffs any auxiliary aids to aid in obtaining leasing information and applications.

CLAIM VIII: **Communication Barriers**

55.     42 United States Code 12182(b) states, "a failure to remove…, and communication barriers that are structural in nature, in existing facilities, and where such removal is readily achievable." Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs are informed, believe, and thereon allege that Defendants violated said provision. At Defendants' business there are

Case#:
COMPLAINT

communication barriers outside and inside the Defendant's business of providing rental services. As stated above, there are Plaintiff Members having sight impaired. Therefore, Plaintiffs need structural communication to access Defendants property.

CLAIM IX AGAINST ALL DEFENDANTS: **Denial Of Full And Equal Access**

56.    Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs were denied full and equal access to Defendants' rental services, goods, facilities, privileges, advantages, or accommodations.  Plaintiff alleges Defendants are a public accommodation owned, leased and/or operated by Defendants. Defendants' existing facilities and/or services failed to provide full and equal access to Defendants' facility as required by 42 U.S.C. § 12182(a).  Thus, both Plaintiffs were subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiffs were denied equal access to Defendants' existing facilities.  In this case, Defendant's apartment facilities, including the office and common areas, failed to comply with ADAAG and Title 24 requirements. Defendant's property has physical access violations that are described above that were experienced by Plaintiff Jessie James Davis IV and Plaintiff Club.  Additionally, Plaintiff Club Access Report also set forth these physical and other barriers to access that deny equal access to Plaintiff Jessie James Davis IV and other members of Plaintiff Club.  As to non-physical barriers that exist, Defendant's facility does not have any of the required hearing-impaired smoke/fire alarms located at the facility.  Defendant's facility does not have a TTY machine available on-site.  Defendants failed to comply with Title 24 and ADAAG standards.

57.    At least one additional Club member ("Member Tester") has physical impairments and due to these impairments he has learned to successfully operate a wheelchair for mobility.  Said physical impairments substantially limit one or more

Case#:
COMPLAINT

of the following major life activities including but not limited to: walking.  Member is unable to walk any distance.  Member also has weakness in upper limb range of motion and has reduced dexterity of his hands.  Member has physical impairments because the conditions affect one or more of the following body systems: neurological, musculoskeletal, special sense organs, and/or cardiovascular.  Further, member's said physical impairments substantially limit one or more of the following major life activities:  walking, and limited range of motion in arms and hands.  In addition, member cannot perform one or more of the said major life activities in the manner, speed, and duration when compared to the average person.  Moreover, at least one of the members of the Plaintiff Club has a history of or has been classified as having a physical impairment as required by 42 U.S.C. § 12102(2)(A).

CLAIM X AGAINST ALL DEFENDANTS: **Failure To Make Alterations In Such A Manner That The Altered Portions Of The Facility Are Readily Accessible And Usable By Individuals With Disabilities**

58.    Plaintiffs are informed, believe, and thereon allege that Defendants altered their facility in a manner that affects or could affect the usability of the facility or a part of the facility after January 26, 1992. In performing the alteration, Defendants failed to make the alteration in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, in violation of 42 U.S.C. §12183(a)(2).  Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiffs were denied full and equal access to Defendants' rental services, goods, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased, and/or operated by Defendants that were altered. In this case, the apartment failed to comply with ADAAG and Title 24 requirements. The physical access violations are described in more detail above and

Case#:
COMPLAINT

within an Access Report that Plaintiff Club caused to be prepared following its investigation.  The findings show that the following areas of access violations: parking, path of travel, accessible route, pool and the signs.  Additionally, Defendant's facility does not have any of the required hearing-impaired smoke/fire alarms located at the facility and also does not have the required TTY machine available on-site.  Defendants failed to comply with these ADAAG and Title 24 standards.

59.    Additionally, Plaintiffs are informed, believe and thereon allege, that the Defendants undertook an alteration that affects or could affect the usability of or access to an area of the facility containing a primary function after January 26, 1992. Defendants further failed to make the alterations in such a manner such that the facilities are readily accessible to the maximum extent feasible, and are usable by individuals with disabilities pursuant to 42 U.S.C. §12183(a)(2), including any of the following that may be applicable, i.e. disabled parking, the path of travel to the altered area, and the bathroom and common areas.

60.    Pursuant to 42 U.S.C. §12183(a), this failure to make the alterations in a manner that, to the maximum extent feasible, are readily accessible to and usable by individuals with disabilities constitutes discrimination for purposes of 42 U.S.C. §12183(a).  Therefore, Defendants discriminated against Plaintiffs in violation of 42 U.S.C. § 12182(a).

61.    Thus, Plaintiff Club and its members, and Plaintiff Jessie James Davis IV were subjected to discrimination by Defendant in violation of 42 U.S.C. § 12183(a), 42 U.S.C. §12182(a) and 42 U.S.C. §12188 since these Plaintiffs were denied equal access to Defendants' altered facilities.

CLAIM XI AGAINST ALL DEFENDANTS: **Failure To Remove Architectural**

41

## Barriers

62.    Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiff Davis and Plaintiff Club were denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased, and/or operated by Defendants.  Defendants failed to remove barriers as required by 42 U.S.C. § 12182(a).  Defendants have an office on the property wherein rental services are provided to the public.  Plaintiffs are informed, believe, and thus allege that architectural barriers which are structural in nature exist within the following physical elements of Defendants' facilities including but not limited to the disabled parking, exterior path of travel, office entrance, common area and signage, as said facilities were not accessible because they failed to comply with the Federal ADA Accessibility Guidelines ("ADAAG") and California's Title 24 Building Code Requirements.  In this case, the apartment complex failed to comply with ADAAG and Title 24 requirements. The physical access violations are described above.  The findings show that the following areas of access violations: parking, entrance, call button, mailboxes, path of travel, accessible route and the signs.  Additionally, Defendant's facility does not have anything posted regarding service animals. Defendant's facility does not have any hearing-impaired smoke/fire alarms located at the facility.  Defendant's facility does not have a TTY machine available on-site.  Title III of the ADA requires places of public accommodation to remove architectural barriers that are structural in nature to existing facilities. [See, 42 United States Code 12182(b)(2)(A)(iv).]  Failure to remove such barriers and disparate treatment against a person who has a known association with a person with a disability are forms of discrimination.  [See 42 United States Code 12182(b)(2)(A)(iv).]  Defendants failed to comply with ADAAG and Title 24 standards. Thus, Plaintiffs were subjected to discrimination in

42

Case#:
COMPLAINT

violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because they were denied equal access to Defendants' existing facilities.

63.      Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Defendants failed to remove barriers as required by 42 U.S.C. § 12182(a).  ADA Title III covers places of public accommodation within residential facilities. See Section III–1.2000, ADA Title III Technical Assistance Manual, http://www.ada.gov/taman3.html. Thus, areas within multifamily residential facilities that qualify as places of public accommodation are covered by the ADA if use of the areas is not limited exclusively to owners, residents, and their guests. ILLUSTRATION 1: A private residential apartment complex includes a swimming pool for use by apartment tenants and their guests. The complex also sells pool "memberships" generally to the public. The pool qualifies as a place of public accommodation.  ILLUSTRATION 2: A residential condominium association maintains a longstanding policy of restricting use of its party room to owners, residents, and their guests. Consistent with that policy, it refuses to rent the room to local businesses and community organizations as a meeting place for educational seminars. The party room is not a place of public accommodation. ILLUSTRATION 3: A private residential apartment complex contains a rental office. The rental office is a place of public accommodation. See Section III–1.2000, ADA Title III Technical Assistance Manual, http://www.ada.gov/taman3.html ("ILLUSTRATION 3: A private residential apartment complex contains a rental office. The rental office is a place of public accommodation");30 Johnson v. Laura Dawn Apartments, LLC, 2012 WL 33040 at *1 n. 1 (E.D.Cal.2012) (Hollows, M.J.) ("[t]he leasing office of an apartment complex is a place of public accommodation, despite the fact that the apartments themselves are not subject to the ADA"). *Kalani v. Castle Village LLC*, 14 F.Supp.3d 1359 (2014).   The fact a facility such as an

43

Case#:
COMPLAINT

apartment complex itself may not fall within the ADA's statutory definition of "public accommodation" does not mean the site may not contain one or more of the enumerated public accommodations within its confines. For example, a restaurant or a retail store located on a cruise ship is still a public accommodation subject to the provisions of the ADA, even if the ship itself is not. Similarly, although a model home used only as an example of what is being offered for sale is a residential property and not a "public accommodation" subject to the ADA, if a room in the model home functions as a sales office, the ADA applies to it. See *Kalani.*

64.    Defendants have an office on the property wherein rental services are provided to the public.  Plaintiffs assert that the office is a public accommodation. Additionally, Plaintiffs alleged that the common areas are also open to the public and that Defendants invite the public to view their rental property as part of the apartment rental process. In this case, Plaintiffs contend that all of the access problems listed above are violations that affect the public. Plaintiffs allegation is also supported because Plaintiffs were allowed to enter the apartments' common area without a gate key. Plaintiffs assert that the ADA Title III applies to any area that is open to the public. Thus, Plaintiffs were subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because they were denied equal access to Defendants' existing facilities, including the office and common areas.

CLAIM XII AGAINST ALL DEFENDANTS: **Failure To Modify Practices, Policies And Procedures**

65.    Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Defendants failed and refused to provide a reasonable alternative by modifying its practices, policies and procedures in that they failed to have a scheme, plan, or

44

Case#:
COMPLAINT

design to assist Plaintiff and/or others similarly situated in entering and utilizing Defendants' services, as required by 42 U.S.C. § 12188(a).  Defendants have known or should have known that Defendants had a duty to repair and maintain their property including accessible features since 1990.  Defendants have failed to do so in the past up to and including the present.  Plaintiffs is also seeking an order requiring the Defendants to have a continuing duty of refurbishing the access features once each year. In the present matter, Defendants failed to have a plan to maintain any potential accessible features in a usable condition.  Thus, Plaintiffs were subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiffs were denied equal access to Defendants' existing facilities. Based on the facts plead at ¶¶ 4 - 25 above, and the facts elsewhere herein this complaint, Plaintiff will suffer irreparable harm unless Defendants are ordered to remove architectural, non-architectural, and communication barriers at Defendants' public accommodation.  Plaintiffs are also seeking an order requiring the Defendants to undertake the required duty of maintaining and refurbishing the access features on a regular basis, i.e. once a year. In the present matter, Defendants failed to have a plan to maintain any potential accessible features in a usable condition.  Specifically, Defendants failed to have a policy to install and maintain accessible disabled parking dimensional striping, access aisles, signage, exterior ground markings, and exterior paths of travel, and an accessible office entrance.  Defendants failure to provide the required accessible parking is an on-going condition that requires future effort to maintain.  Defendants past and present failure to provide the required accessible parking features such as dimensionally correct parking spaces, access aisles, and disable parking signage is a result of Defendants' failure to have the required policy and procedures in place to maintain these features.  Additionally, Defendants failed to have a policy to install

45

Case#:
COMPLAINT

and maintain an exterior accessible route and exterior directional signage to the office, failed to have a policy to install and maintain a leasing office entrance and interior that was accessible.   Plaintiffs allege that Defendants' discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiffs and a substantial segment of the disability community.  Plaintiffs allege there is a national public interest in requiring accessibility in places of public accommodation.  Plaintiffs have no adequate remedy at law to redress the discriminatory conduct of Defendants.  Plaintiffs desire to return to Defendants' place of business in the immediate future.  Accordingly, the Plaintiffs allege that a structural or mandatory injunction is necessary to enjoin compliance with federal civil rights laws enacted for the benefit of these Plaintiff and other individuals with similar disabilities.

CLAIM XIII - **Failure To Investigate And Maintain Accessible Features**

66.    It is alleged that Defendants knowing failed to investigate ADA access compliance at the planning stage of opening the business or at the annual renewal of the business. At trial, Plaintiff shall prove Defendants entered a fee absolute or lease without considering ADA access at all, because they consciously decided they were exempted or they were in ADA physical access compliance because a local government approved the building plans for the property. It is alleged that Defendants reasoned that providing physical access means providing full and equal access, and this is the explanation for their failure to investigate providing reasonable modifications, alternative methods or auxiliary aids and their failure to investigate removing communication barriers. However, as alleged herein ADA covers more than physical access. It is alleged that Defendants opened their business

Case#:
COMPLAINT

in compliance with all laws. In the course of time, Defendants made repairs and administrative changes which violated ADA and its regulations. ADA Title III Regulations state, "Sec.36.211 Maintenance of accessible features.  (a) A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part. (b) This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs." For the purposes of this part of this claim Plaintiffs allege Defendants mental state satisfied the second prong of intent - knowledge to a substantial certainty. Also, it is alleged Defendants exercised administrative control over third parties including architects, engineers, construction contractors, lawyers, management and employees as to the accessible features of the public accommodation. Accessible features include compliance with new construction and alteration access standards, readily achievable architectural and communication standards, and providing alternative methods, reasonable modifications.   The basis of this claim is that Defendants did and does not have a process to maintain prior and future accessible features. Further, it is alleged that even if Defendants currently install accessible features they will not maintain them in the future. Thus, it is alleged that Defendants intentionally failed to maintain accessible features they installed when the property was first constructed or when the public accommodation was first open or when the property was remodeled.  WHEREFORE, Plaintiff prays for judgment and relief as hereinafter set forth.

**DISCRIMINATORY PRACTICES IN PUBLIC ACCOMMODATIONS**
FOURTH CAUSE OF ACTION: PLAINTIFF JESSIE JAMES DAVIS IV ONLY AGAINST ALL DEFENDANTS - **CLAIMS UNDER CALIFORNIA**

47

Case#:
COMPLAINT

## **ACCESSIBILITY LAWS**

CLAIM I: **Denial Of Full And Equal Access**

67.    Based on the facts plead at ¶¶ 4 - 25 above and elsewhere in this complaint, Plaintiff Jessie James Davis IV was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased, and/or operated by Defendants as required by Civil Code Sections 54, 54.1, and specifically 54.1(d).  Defendants' facility violated state disability access laws, the ANSI Standards, A117, and California's Title 24 Accessible Building Code by failing to provide equal access to Defendants' facilities to persons with disabilities.   In this case, Defendant's rental apartment failed to comply with ADAAG and Title 24 requirements.  Plaintiff Jessie James Davis IV's findings show that the following areas of physical access violations exist at the property: parking, path of travel, accessible route, pool and the signs. Additionally, Defendant's facility does not have any of the required hearing-impaired smoke/fire alarms located at the facility.  Defendant's facility does not have the required TTY machine available on-site.  All said violations failed to comply with ADAAG and Title 24 standards.   Therefore, the Plaintiff Jessie James Davis IV alleges that Defendant violated Civil Code Section 54.3 at the time they constructed the facility before the ADA was enacted.

68.    Defendants denied Plaintiff Jessie James Davis IV full and equal access to Defendants' facility. Thus, Plaintiff Jessie James Davis IV was subjected to discrimination pursuant to Civil Code §§ 54, 54.1, and 54.3.

CLAIM II: **Failure To Modify Practices, Policies And Procedures**

69.    Based on the facts plead at ¶¶ 4 - 25 above and elsewhere herein this complaint, Defendants failed and refused to provide a reasonable alternative by modifying its practices, policies, and procedures in that they failed to have a

48

scheme, plan, or design to assist Plaintiff Jessie James Davis IV and/or others similarly situated in entering and utilizing Defendants' services as required by Civil Code § 54.1.  Additionally, Defendants failed to have a plan to maintain any potential accessible features in a usable condition.  Thus, Plaintiff Jessie James Davis IV was subjected to discrimination in violation of Civil Code § 54.1.

CLAIM III: **Violation Of The Unruh Act**

70.     Based on the facts plead at ¶¶ 4 - 25 above and elsewhere herein this complaint and because Defendants violated the CA Civil Code § 51 by specifically failing to comply with Civil Code §51(f).  Defendants' facility violated state disability laws, the ANSI Standards, A117, and California's Title 24 Accessible Building Code by failing to provide equal access to Defendants' facilities.  Defendants did and continue to discriminate against Plaintiff Jessie James Davis IV in violation of Civil Code §§ 51(f), and 52.

71.     Based on the facts plead at ¶¶ 4 - 26 above, Claims I, II, and III of Plaintiff Jessie James Davis IV's Third Cause Of Action above, and the facts elsewhere herein this complaint, Plaintiff will suffer irreparable harm unless Defendants are ordered to remove architectural, non-architectural, and communication barriers at Defendants' public accommodation.  Plaintiffs allege that Defendants' discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiff and a substantial segment of the disability community.  Plaintiff alleges there is a state public interest in requiring accessibility in places of public accommodation.  Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendants.  Plaintiff desires to return to Defendants' places of business in the immediate future.  Accordingly, the Plaintiff alleges that a structural or mandatory injunction is necessary to enjoin compliance with state civil rights laws enacted for the benefit of individuals with disabilities.

Case#:
COMPLAINT

72.     Wherefore, Plaintiff Jessie James Davis IV prays for damages and relief as hereinafter stated.

## Treble Damages Pursuant To Claims I, II, III Under The California Accessibility Laws

73.     Defendants, each of them respectively, at times prior to and including the day Plaintiff Jessie James Davis IV patronized Defendants' facilities, and continuing to the present time, knew that persons with physical disabilities were denied their rights of equal access to all portions of this public accommodation facility.  Despite such knowledge, Defendants, and each of them, failed and refused to take steps to comply with the applicable access statutes; and despite knowledge of the resulting problems and denial of civil rights thereby suffered by Plaintiff Jessie James Davis IV.  Defendants, and each of them, have failed and refused to take action to grant full and equal access to Plaintiff Jessie James Davis IV in the respects complained of hereinabove.  Defendants, and each of them, have carried out a course of conduct of refusing to respond to, or correct complaints about, denial of disabled access and have refused to comply with their legal obligations to make Defendants' public accommodation facilities accessible pursuant to the ADAAG and Title 24 of the California Code of Regulations (also known as the California Building Code).  Such actions and continuing course of conduct by Defendants in conscious disregard of the rights and/or safety of Plaintiff justify an award of treble damages pursuant to sections 52(a) and 54.3(a) of the California Civil Code.  The California Supreme Court has stated:  "…the statute provides for damages aside from any actual damages incurred by the plaintiff. 'This sum is unquestionably a penalty which the law imposes, and which it directs shall be paid to the complaining party. ... [But], while the law has seen fit to declare that it shall be paid to the complaining party, it

Case#:
COMPLAINT

might as well have directed that it be paid into the common-school fund. The imposition is in its nature penal, having regard only to the fact that the law has been violated and its majesty outraged'." *Koire v Metro Car Wash (1985) 40 Cal.3d 24, 33-34* [citing its decision in *Orloff v. Los Angeles Turf Club (1947) 30 Cal.2d 110, 115*].

74.     Defendants, and each of their actions have also been oppressive to persons with physical disabilities including Plaintiff Jessie James Davis IV and have evidenced actual or implied malicious intent toward Plaintiff Jessie James Davis IV who has been denied the proper access to which he is entitled by law.  Further, Defendants and each of their refusals or omissions to correct these problems evidence disregard for the rights of Plaintiff Jessie James Davis IV.

75.     Plaintiff Davis prays for an award of treble damages against Defendants, and each of them, pursuant to California Civil Code sections 52(a) and 54.3(a).

## DEMAND FOR JUDGMENT FOR RELIEF:

A.     All named Plaintiffs seeks injunctive relief pursuant to 42 U.S.C. 3613(c) and 42 U.S.C. § 12188(a).  Only the individual Plaintiff seeks injunctive relief pursuant to CA Civil Code §52.  Pursuant to 42 U.S.C. 3613(c), all Plaintiffs request this court to enjoin Defendants to cease their discriminatory practices in housing rentals, and housing management services and for Defendants to implement written policies and methods to respond to reasonable accommodation and reasonable modification requests.  Pursuant to 42 U.S.C. § 12188(a), Plaintiffs request this Court enjoin Defendants to remove all barriers to equal access to the disabled Plaintiffs in, at, or on their facilities, including but not limited to architectural and communicative barriers in the provision of Defendant's rental services.  Plaintiffs do not seek injunctive relief pursuant to Cal. Civil Code §55 and Plaintiffs do not seek attorneys' fees pursuant to Cal. Civil Code §55.  Plaintiffs do not seek any relief at

Case#:
COMPLAINT

all pursuant to Cal. Civil Code §55.

B.      All named Plaintiffs seek actual damages pursuant to 42 U.S.C. 3613(c);

C.   Only the named individual Plaintiff Jessie James Davis IV seeks recovery of actual damages pursuant to Cal. Civil Code §§ 52 or 54.3

D.      Only the named individual Plaintiff Jessie James Davis IV seeks $4,000 in minimum statutory damages pursuant to Cal. Civil Code § 52 for each and every offense of Civil Code § 51, pursuant to Munson v. Del Taco, (June 2009) *46 Cal. 4th 661*;

E.      In the alternative to the damages pursuant to Cal. Civil Code § 52 in Paragraph C above, only the named individual Plaintiff Jessie James Davis IV seeks $1,000 in minimum statutory damages pursuant to Cal. Civil Code § 54.3 for each and every offense of Civil Code § 54.1;

F.      All named Plaintiffs seek attorneys' fees pursuant to 42 U.S.C. 3613(c)(2), 42 U.S.C. § 12205, and Cal. Civil Code §§ 52, 54.3;

G.      Only the named individual Plaintiff seeks treble damages pursuant to Cal. Civil Code §§ 52(a) or 54.3(a);

H.      All named Plaintiffs seek a Jury Trial and;

I.      For such other further relief as the court deems proper.

Respectfully submitted:

                                        LAW OFFICES OF DAVID C. WAKEFIELD

Dated:  February 2, 2018

                                        By:    /s/David C. Wakefield
                                               DAVID C. WAKEFIELD, ESQ.
                                               Attorney for Plaintiffs

52

Case#:
COMPLAINT